# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

DANIEL J. COTTRELL,

        **Plaintiff,**

                                      **Civil Action 2:18-cv-00069**
                                        **Judge George C. Smith**
      **v.**                                **Chief Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF SOCIAL SECURITY,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Daniel James Cottrell ("Plaintiff"), brings this action under 42 U.S.C. §§ 405(g) and 1383(c) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income benefits ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Memorandum in Opposition (ECF No. 12), and the administrative record (ECF No. 6). Plaintiff did not file a Reply. For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.  BACKGROUND

Plaintiff applied for disability benefits and supplemental security income on April 15, 2014. (R. at 175–76.) Plaintiff's claim was denied initially and upon reconsideration. (R. at

117–30.)  Upon request, a hearing was held on September 9, 2016 in which Plaintiff, represented

by counsel, appeared and testified.  (R. at 40, 131–33.)  A vocational expert also appeared and

testified at the hearing.  (R. at 40.)  On January 3, 2017, Administrative Law Judge Noceeba

Southern ("the ALJ") issued a decision finding that Plaintiff was not disabled at any time after

June 3, 2013, the alleged onset date.  (R. at 18–33.)  On November 30, 2017 the Appeals Council

denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final

decision.  (R. at 1–3.)  Plaintiff then timely commenced the instant action.  (ECF No. 1.)

## II.  HEARING TESTIMONY

### A.  Plaintiff's Testimony

Plaintiff testified that he lives with his wife and three kids who are ages two years, eight

years, and thirteen years.  (R. at 45.)  Plaintiff further testified that his wife is employed cleaning

houses and taking care of elderly persons.  (R. at 45–46.)  Plaintiff stated that he has a driver's

license and usually drives every day to take his son to daycare.  (R. at 63.)  He stated that he tries

not to drive longer than twenty to thirty minutes a day.  (*Id.*)  He further stated that he attends his

son's baseball games once a week during the season and that he plays video games with his kids.

(R. at 64.)  Plaintiff also stated that he uses Facebook "every once in a while" and has "maybe

fifty" Facebook friends.  (R. at 65.)  Plaintiff testified that friends come to visit him at home

"once a month maybe, twice a month."  (R. at 68.)  He also testified that sometimes he goes out

and visits friends.  (*Id.*)

Plaintiff stated that he last worked a "steady job" in June 2013.  (R. at 46.)  He stated that

he worked for Bucyrus Blades as a painter/shipping clerk.  (R. at 47.)  Plaintiff stated that as a

painter the most physically difficult aspect was flipping seven-hundred to eight-hundred-pound

blades over with the aid of another person.  (*Id.*)  Plaintiff testified that he was eventually

designated to work as a shipping clerk because he "got hurt" and couldn't stand or sit for long periods of time. (R. at 49.) Plaintiff stated that he had one partial day of employment since then for Securitas as part of a vocational rehab project. (R. at 46.)

Plaintiff testified that he has problems with his back. (R. at 51.) He testified that he has had surgeries including "where they clip the disc" and "put a canal in [his] bone and put the nerve in because it had nerve damage." (R. at 51–52.) He also testified that he had a fusion on June 3, 2013. (R. at 52.) Plaintiff stated that Dr. Bonasso performed both of his surgeries. (*Id.*) Regarding the fusion, Plaintiff testified that "it helped a little bit" because he "wasn't getting stuck hunched over," so it helped "physically" but "with the pain, it really didn't help at all." (*Id.*) Plaintiff also testified that Dr. Bonasso said he will "more than likely" need more fusions. (R. at 62.) Plaintiff further testified that he has pain in both legs and his lower back. (R. at 52.) Plaintiff stated the pain is a "constant aching" and if he bends or twists it "feels like [he is] getting stabbed with a knife in [his] back." (*Id.*) Plaintiff also stated that weather changes and his activity level affect his pain. (R. at 52–53.)

Plaintiff testified that on August 4, 2014 he received a spinal cord stimulator via surgery by Dr. Gould. (R. at 53.) Plaintiff further testified that the spinal cord stimulator "helps a little" with his back, but "more with [his] legs." (R. at 54.) Plaintiff stated he carries a remote all the time which allows him to adjust the stimulator. (*Id.*) Plaintiff further stated that he adjusts it "maybe a dozen times" a day. (*Id.*) Plaintiff testified that he must "watch bending and twisting" so that he does not "pull out the leads" on the spinal cord stimulator. (R. at 57.) Plaintiff also testified that he still takes medications including Norcos, Ibuprofen, Norflex, Trazodone, Lyrica, Cymbalta, and Buspar. (R. at 55–56.) Plaintiff stated that he experiences drowsiness from the medications. (R. at 57.)

Plaintiff explained that he began seeing a psychiatrist "about a year ago" because he was in "worse moods" and "had a lot of suicidal thoughts because [he] can't do what [he] used to be able to do." (R. at 58.) Plaintiff further stated that he sees Dr. Spare, and a member of his staff, Dr. Robin. (R. at 59.) Plaintiff testified that in the sessions with a psychiatrist they will "talk about [his] moods and what's made it worse or made it better." (*Id.*) Plaintiff further testified that his temper and patience are now "a little bit better" but he still gets frustrated because he "can't move right or [he] drop[s] stuff a lot." (*Id.*) Plaintiff stated that he is "healthy other than [his] back and depression." (R. at 63.)

The ALJ asked Plaintiff to explain what happened between July 30, 2014 and November 2014 that caused "such a transformative change in [his] mental psyche." (R. at 76.) Plaintiff testified that his wife told him he had to "admit [his] problem" and "do something about it." (*Id.*) Plaintiff also testified that he had not wanted to be diagnosed with depression, but at that point he had to admit his issues. (*Id.*)

### B. Vocational Expert Testimony

Connie O'Brien testified as the vocational expert ("VE") at the September 2016 hearing. (R. at 40.) The VE testified that assuming a hypothetical individual of the same age, education, background, and work experience as Plaintiff, with an RFC to perform light work except that the individual could climb ramps or stairs frequently, climb ladders, ropes, or scaffolds occasionally, stoop occasionally, and crouch occasionally, and he could perform the job of shipping clerk, mail sorter, marker, and garment sorter. (R. at 81–82.) Assuming the same hypothetical individual except that the individual is further limited in that he requires goal-based work rather than a production-rate pace, need an additional break, and require a position of low stress such that there would only be occasional changes in the work setting, the VE testified that the individual

could perform Plaintiff's past employment as a shipping clerk, and the jobs of mail sorter, garment sorter, and marker.  (R. at 82–83.)

The VE testified that assuming the same hypothetical individual, except that this individual also requires a sit-stand option every other hour (*i.e.*, four hours sitting, four hours standing in an eight-hour day), and this individual can occasionally do ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally kneel and crouch, and frequently balance, and he could perform the jobs of shipping clerk, mail sorter, cashier, photocopy machine operator.  (R. at 84.)  The VE further testified that the same jobs would be available to the individual if they were off task up to five to seven percent of the day, but it would be work preclusive if the individual had to miss an additional day of work each month.  (R. at 86–87.)

Assuming a hypothetical individual of the same age, education, background, and work experience as Plaintiff, with an RFC to perform at the sedentary level except that this individual is limited to occasionally climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, occasionally balancing, stooping, kneeling, crouching, and crawling, and this individual requires goal-based work rather than a production-rate pace, along with an additional fifteen-minute break and occasional changes in the work setting such that it creates low stress, the VE testified that this individual could not perform Plaintiff's past work, but could work as an addresser, document specialist, and charge account clerk.  (R. at 85–86.)

### III. MEDICAL RECORDS

#### A.  Christian L. Bonasso, M.D.

Dr. Bonasso performed lumbar spine surgery on Plaintiff in 2013.  (R. at 291–96.)  In the report regarding the surgery, Dr. Bonasso noted that Plaintiff had undergone a lumbar discectomy in the past, and he had recurrent disc herniation and disc space collapse.  (R. at 292.)

On January 15, 2014, Dr. Bonasso wrote a letter to Dr. Robert Gould, D.O., opining that Plaintiff was "still having quite a bit of dysesthetic left leg pain" and that he "completely agree[d] with a spinal cord stimulator trial."  (R. at 322.)  Furthermore, Dr. Bonasso opined in the letter that Plaintiff's restrictions "would include a 20-pound weight limit and only occasional lifting and bending."  (*Id.*)  On May 14, 2014, Dr. Bonasso wrote another letter to Dr. Gould, opining that Plaintiff's CT myelogram "actually looked good" and that there was "a little bit of bulging at L4-L5 but nothing [he] would recommend an operation for at this point."  (R. at 314.)  Dr. Bonasso also stated that Plaintiff would proceed with the spinal cord stimulator trial.  (*Id.*)

On June 6, 2015, Dr. Bonasso wrote another letter to Dr. Gould.  (R. at 440.)  Dr. Bonasso opined that due to Plaintiff's lumbar fusion "he is significantly limited in bending, lifting, pulling and all physical activities involving his back for the rest of his life."  (*Id.*)  Dr. Bonasso further opined that Plaintiff "is limited with regards to extensive sitting or standing without taking a break."  (*Id.*)  Finally, Dr. Bonasso opined that pain would affect Plaintiff's concentration on a daily basis and he "believe[d] [Plaintiff] should not return to work."  (*Id.*)  Dr. Bonasso attached a "Medial Source Statement of Ability to do Work-Related Activities (Physical)" to the letter.  (R. at 441–44.)  In the form, Dr. Bonasso opined that Plaintiff could occasionally lift and/or carry less than ten pounds, stand and/or walk less than two hours in an 8-hour work day, could sit less than six hours in an 8-hour work day, could never climb ramps/stairs/ladders/ropes/scaffolding, could never balance, could never kneel, could never crouch, could never crawl, and could occasionally stoop.  (R. at 441–42.)  Dr. Bonasso further opined that Plaintiff's pain would "intrude upon his concentration most of the day."  (R. at 443.)

**B. Joseph Spare, M.D.**

Dr. Spare saw Plaintiff for the first time on March 26, 2015.  (R. at 390.)  Plaintiff was

referred to Dr. Spare for treatment for depression.  (*Id.*)  Dr. Spare noted the following regarding

Plaintiff's description of feeling depressed:

> [Plaintiff] has depressive symptoms which he described as being the result of not
> being able to do many of the things he used to do.  He is feeling useless and
> evidencing some loss of interest in usual activities.  He has had suicidal ideation,
> although said he would not follow through on it because of his family.

(*Id.*)  Dr. Spare made the following evaluations on Plaintiff's general appearance, motor activity,

and thought process and content:

- Level of consciousness: awake, alert

- Appearance: appropriately dressed, well groomed

- Manner: passive

- Posture: slumped

- Mood: depressed, anxious

- Speech: halting

- Thought process: coherent, appropriately conversant

- Thought content: somatic concerns, demoralized

- Delusional thinking: none

- Perception: no perceptual impairment

(R. at 391-92.)  Furthermore, Dr. Spare opined that Plaintiff "is able to give informed consent,

handle financial affairs, live independently, but unable to return to usual work and unable to

return to part time work."  (R. at 392–93.)  Dr. Spare also opined that Plaintiff had marked

limitations in several areas.  (R. at 395.)

On May 5, 2015, Dr. Spare saw Plaintiff again.  (R. at 414.)  Dr. Spare noted that Plaintiff reported "he was feeling better, tolerating medication without difficulty, seemed in much better spirits, spending time doing some tasks around the house and with his children." (*Id.*)  Dr. Spare also saw Plaintiff on May 19, 2015.  (R. at 431.) Dr. Spare noted that Plaintiff complained of depression, decreased energy, recurrent thoughts of death, thoughts of suicide, low self-esteem, excessive worrying, sleep disturbances, fear of crowds, fear of traffic, and poor memory.  (R. at 431–32.)

On May 29, 2015, Dr. Spare completed a "Medical Statement of Ability to do Work Related Activities (Mental)" for Plaintiff.  (R. at 425–26.)  In the report, Dr. Spare opined that Plaintiff had the following limitations:

- Follow work rules – mild limitation

- Relate to co-workers – moderate limitation

- Deal with the public – moderate limitation

- Use judgment – moderate limitation

- Interact with supervisor(s) – marked limitation

- Deal with work stresses – extreme limitation

- Function independently – moderate limitation

- Maintain attention/concentration – marked limitation

(*Id.*)  Dr. Spare also evaluated Plaintiff on the same day.  (R. at 427.)  Dr. Spare noted that Plaintiff reported his "mood is generally better and he is less irrita[ted], he was having some discomfort because of the changing whether [sic] particularly cold evenings, was trying to find some things she [sic] could do smaller things that didn't require as much physical energy."  (*Id.*)

Dr. Spare further noted that Plaintiff denied suicidality and opined that there was no impairment in Plaintiff's judgment. (R. at 428.)

In June 2015, Dr. Spare, without assessing any functional limitations, opined that Plaintiff "suffers depression which is secondary to injury sustained at work and persisting disability and chronic pain due to back discomfort." (R. at 446.) Dr. Spare further opined that Plaintiff "experiences sleep disturbance, poor concentration, negative self-perception, and feelings of general worthlessness." (*Id.*)

### C. Bethany Pearson, PT

Ms. Pearson, a physical therapist, completed a "WorkAbility Functional Capacity Evaluation/Summary Report of WorkAbility" for Plaintiff on March 11, 2014. (R. at 297–313.) In the report, Ms. Pearson made the following evaluations regarding Plaintiff's abilities:

- High lift strength – 12 pounds

- Chest lift strength – 20 pounds

- Carry strength – 20 pounds

- Knee lift strength – 22 pounds

- Low lift strength – 20 pounds

- Horizontal push strength – 67 pounds

- Horizontal pull strength – 71 pounds

- Frequent lift/carry – 19 pounds

- Standing only tolerance – frequent

- Sitting only tolerance – occasional

- Operating foot controls tolerance – occasional

- High reaching above shoulder tolerance – occasional

- Head turning greater than 45 degrees tolerance – constant

- Forward bending/stooping tolerance – none

- Low work (e.g., kneel/squat) tolerance – occasional

(R. at 297.)  Ms. Pearson indicated that her work release status recommendation included both

"temporary restrictions for work" and "permanent restrictions for work."  (*Id.*)  In making those

recommendations, Ms. Pearson explained the following:

> Currently [Plaintiff] is unable to be employed if the job responsibilities include sitting more than seldomly, operating foot controls more than seldomly, standing more than frequently, forward bending or stooping at all, kneeling/squatting/climbing more than seldomly, or walking at a fast pace. [Plaintiff] is unable to return to his prior job with the job duties as described at this time.   [Plaintiff's] current conditions appear to be causing temporary total disability.   In an 8 hour workday, [Plaintiff] would be able to sit for less than 2 hours with breaks, walk 2-3 hours with breaks, and stand less than 2 hours with breaks.   [Plaintiff] measured mildly to moderately impaired with activities of daily living.   There are no other health issues that [Plaintiff] is being treated for.  [Plaintiff] was pleasant and appeared to give full, safe effort for all tasks.  [Plaintiff] only self-limited tasks due to an increase in symptoms.  [Plaintiff's] resting heart rate remained rather high throughout testing but [Plaintiff] stated he did not feel ill, and voiced that it felt it was high due to pain and feeling nervous.  [Plaintiff] was consistent with his complaints of low back pain with bilateral buttock pain, especially severe on the left side.  When the pain was severe, [Plaintiff's] gait pattern was noted to become increasingly antalgic with decreased endurance.

(*Id.*)

## IV. ADMINISTRATIVE DECISION

On January 3, 2017 the ALJ issued her decision.  (R. at 18–33.)  At step one of the

sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

  1.     Is the claimant engaged in substantial gainful activity?
  2.     Does the claimant suffer from one or more severe impairments?

gainful activity since June 3, 2013, the alleged onset date.  (R. at 20.)  The ALJ found that

Plaintiff has the following severe impairments:  a major depressive disorder and degenerative

disc disease of the lumbar spine.  (R. at 21.)  The ALJ further found that Plaintiff did not have an

impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional

capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) except the [Plaintiff] can frequently climb ramps and stairs,
> and occasionally stoop, crouch, and climb ladders, ropes, and scaffolds.  The
> [Plaintiff] can perform goal-based production work that is not at a production rate
> pace.  He would need an additional break during the workday and he would need a
> low stress job (which is defined in the [Plaintiff's] case as a job where there are no
> more than occasional changes).

(R. at 23.)  In making this assessment, the ALJ noted that she had "considered all

symptoms and the extent to which these symptoms can reasonably be accepted as consistent with

the objective medical evidence and other evidence, based on the requirements of 20 CFR

404.1529 and SSR 96-4p."  (*Id.*)  Furthermore, the ALJ noted that she "also considered opinion

evidence in accordance with the requirements of 20 CFR 404.1527."  (*Id.*)  Regarding her RFC

determination, the ALJ made the following note:

---

3.  Do the claimant's severe impairments, alone or in combination, meet or
equal the criteria of an impairment set forth in the Commissioner's Listing of
Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity, can the claimant
perform his or her past relevant work?

5.  Considering the claimant's age, education, past work experience, and residual
functional capacity, can the claimant perform other work available in the national
economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> After careful consideration of the evidence, the [ALJ] finds that . . . the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . .
>
> . . .
>
> [Plaintiff's] complaints have not been completely dismissed, but rather, have been included in the residual functional capacity to the extent that they are consistent with the evidence as a whole. Nevertheless, in considering the criteria enumerated in the Regulations, Rulings, and case law for evaluating the [Plaintiff's] subjective complaints, the [Plaintiff's] testimony was not persuasive to establish an inability to perform the range of work assessed herein. The location, duration, frequency, and intensity of the [Plaintiff's] alleged symptoms, as well as precipitating and aggravating factors are adequately addressed and accommodated in the above residual functional capacity.

(R. at 24, 30.) In addition, the ALJ cited to the medical evidence and opinion evidence which she indicated supported her findings. (R. at 24–29.)

The ALJ concluded that the Plaintiff is capable of performing past relevant work as a shipping clerk, because this work does not require the performance of work-related activities precluded by the Plaintiff's RFC. (R. at 30.) The ALJ relied on the VE's testimony and noted that when the VE was asked to assume that the Plaintiff had the foregoing RFC, she concluded that the Plaintiff could perform his past relevant work as a shipping clerk. (R. at 31.) Furthermore, the ALJ found that considering the Plaintiff's age, education, work experience, and RFC, besides his past relevant work as a shipping clerk, there are jobs that exist in significant numbers in the national economy that the Plaintiff can also perform. (R. at 31.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act from the alleged onset date, June 3, 2013, through the date of the administrative decision. (R. at 32.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

# VI.    ANALYSIS

Plaintiff puts forth two assignments of error.  Plaintiff contends that the ALJ failed to comply with 20 C.F.R. § 404.1527 and SSR 96-2P[2] by failing to properly evaluate the opinions of his treating physician and treating psychologist.  Plaintiff also contends that the ALJ's RFC determination is not supported by substantial evidence.  The Undersigned will address each contention in turn.

## A.  Evaluation of Treating Physician and Treating Psychologist Opinions

In evaluating a claimant's case, the ALJ must consider all medical opinions that she receives.  20 C.F.R. § 416.927(c).  Medical opinions include any "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ."  20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the [claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).

---

[2] SSR 96-2P was rescinded by Federal Register Notice Vol. 82, No. 57, pg. 15263 effective March 27, 2017.  However, the ALJ issued the ruling before this date on January 3, 2017, such that it applies to this case.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ

must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

(6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling

weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment
> relationship and the frequency of examination, the nature and extent of the
> treatment relationship, supportability of the opinion, consistency of the opinion
> with the record as a whole, and the specialization of the treating source—in
> determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination

or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. §

416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to

any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550

(6th Cir. 2010) (internal quotation omitted). The Sixth Circuit has stressed the importance of the

good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the
> disposition of their cases," particularly in situations where a claimant knows that
> his physician has deemed him disabled and therefore "might be especially
> bewildered when told by an administrative bureaucracy that she is not, unless some
> reason for the agency's decision is supplied." *Snell v. Apfel*, 177 f.3d 128, 134 (2d
> Cir. 1999). The requirement also ensures that the ALJ applies the treating physician
> rule and permits meaningful review of the ALJ's application of the rule. *See
> Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45. Thus, the reason-giving requirement is "particularly

important when the treating physician has diagnosed the claimant as disabled." *Germany-

Johnson v. Comm'r of Soc. Sec*., 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d

at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson*

factors within the written decision.  *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity.  20 C.F.R. § 404.1527(d).  Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance.  20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Plaintiff asserts that the ALJ failed to properly evaluate the medical opinions of his treating physician, Dr. Bonasso, and treating psychologist, Dr. Spare.  (ECF No. 7, at pg. 6.) Specifically, Plaintiff asserts that the ALJ erred in not assigning controlling weight to the two opinions.  (*Id.*)

### 1. Dr. Bonasso

The ALJ assigned particular weight to two of Dr. Bonasso's opinions.  The ALJ assigned "great weight" to Dr. Bonasso's January 2014 opinion that Plaintiff would have a weight limit of twenty pounds and occasional lifting and bending.  (R. at 27, 322.)  Substantial evidence supports the ALJ's assignment of "great weight" to Dr. Bonasso's 2014 opinion.  Subsequent progress notes from Dr. Bonasso do not contain objective exam findings which would support greater limitations.  (R. at 27, 314–21.)

The ALJ assigned "little weight" to Dr. Bonasso's June 2015 opinion which asserted that Plaintiff would be "significantly limited in bending, lifting, pulling and all physical activities involving his back for the rest of his life," that Plaintiff would be "limited with regards to extensive sitting or standing without taking a break," and that pain would affect Plaintiff's concentration on a daily basis and therefore Plaintiff should not return to work.  (R. at 440.)  Dr.

Bonasso further opined that Plaintiff could only occasionally lift and/or carry less than ten pounds, stand and/or walk less than two hours in an 8-hour work day, could sit less than six hours in an 8-hour work day, could never climb ramps/stairs/ladders/ropes/scaffolding, could never balance, could never kneel, could never crouch, could never crawl, and could occasionally stoop. (R. at 441–42.) Substantial evidence supports the ALJ's assignment of "little weight" to Dr. Bonasso's 2015 opinion. Dr. Bonasso's own progress notes, in fact, do not support the opinion, given that the progress notes reflected that Plaintiff was doing better, weaning off of medication, and ambulating independently. (R. at 28, 341–66, 387–88.) Furthermore, Dr. Bonasso's 2015 opinion was not consistent with Plaintiff's self-reported activities including driving, housework, attending sporting activities, shooting, and riding a tractor around the farm. (R. at 28, 63, 69, 367–68, 340, 480.)

"Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion." *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175–76 (6th Cir. 2009) (citations omitted). Here, Dr. Bonasso's 2015 opinion is inconsistent with his own progress notes and Plaintiff's self-reported activities. *See Mohamed v. Comm'r of Soc. Sec*, No. 14-cv-00078, 2015 WL 1439261, at *4 (S.D. Ohio March 27, 2015) ("The ALJ found the limitations contained in [the physician's] opinion were inconsistent with Plaintiff's daily living activities . . . [t]herefore, the ALJ's opinion is supported by substantial evidence and permits a meaningful review.").

Plaintiff, though, asserts that Dr. Bonasso's treatment notes and the evaluation of Bethany Pearson, Plaintiff's physical therapist, support the limitations in Plaintiff's medical source statement. (ECF No. 7, at pg. 8.) Even if Plaintiff was correct that Dr. Bonasso's

treatment notes and Bethany Pearson's evaluation were not inconsistent with Dr. Bonasso's 2015 opinion, the 2015 opinion was still inconsistent with other substantial evidence. *See Price*, 342 F. App'x at 175–76. "[A]n ALJ must give a treating physician's opinion controlling weight only if the opinion relies on objective medical findings, . . . and substantial evidence does not contradict it . . . . If the ALJ finds the treating physician's opinion fails to meet these two conditions, he may discredit that opinion so long as he communicates a reasoned basis for doing so." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 441 (6th Cir. 2010) (citations omitted). Here, the ALJ provided a reasoned basis for not giving Dr. Bonasso's 2015 opinion controlling weight, namely that it was inconsistent with Dr. Bonasso's own progress notes and Plaintiff's self-reported activities. The Undersigned finds, therefore, that the ALJ properly evaluated the opinions of Dr. Bonasso.

### 2. Dr. Spare

The ALJ assigned "little weight" to a number of Dr. Spare's opinions. The ALJ assigned "little weight" to Dr. Spare's March 2015 opinion, in which, after seeing Plaintiff on one occasion, Dr. Spare opined that Plaintiff had "marked" limitations in several fields and was "unable to return to usual work and unable to return to part time work." (R. at 28, 392–95.) Because this opinion was offered after Dr. Spare had seen Plaintiff only once, it could not be based on longitudinal evidence.

Additionally, inasmuch as Plaintiff intends to characterize him as such, Dr. Spare was not a treating source at the time he rendered the March 2015 opinion. Ordinarily, the ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot

be obtained from the objective medical filings alone . . . ."  20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the plaintiff.  20 C.F.R. § 404.1502.  The Court must determine whether an ongoing treatment relationship exists at the time the physician's opinion is rendered.  *Kornecky v. Comm'r of Soc. Sec.*, No. 04-2171, 167 F. App'x 496, 506 (6th Cir. Feb. 9, 2006) ("[T]he relevant inquiry is . . . whether [claimant] had the ongoing relationship with [the physician] *at the time he rendered his opinion*.  [V]isits to [the physician] *after* his RFC assessment could not retroactively render him a treating physician at the time of the assessment."); *see also Yamin v. Comm'r of Soc. Sec.*, 67 F. App'x 883, 885 (6th Cir. 2003) ("These two examinations did not give [the physician] a long term overview of [the claimant's] condition.").  This is because "the rationale of the treating physician doctrine simply does not apply" where a physician issues an opinion after a single examination.  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

In the instant case, Dr. Spare offered an opinion on Plaintiff's condition after only one session.  This single examination simply did not give Dr. Spare a long-term overview of Plaintiff's condition.  Rather, Dr. Spare's opinion was based largely on Plaintiff's subjective complaints which are not supported by the totality of evidence.  (R. at 28, 63, 69, 341–68, 340, 387–88, 480.)  Therefore, to the extent Plaintiff asserts that the ALJ erred by not affording controlling weight to the opinions of Dr. Spare, that position is misplaced.

An ALJ must evaluate medical opinions in the context of the record as a whole.  20 C.F.R. § 404.1527(b).  Furthermore, when a treating physician's opinion about a plaintiff's work ability is based largely on the plaintiff's subjective complaints and not supported by other medical evidence in the record, the ALJ may discount the opinion.  *Sims v. Comm'r of Soc. Sec.*,

406 F. App'x 977, 979–80 (6th Cir. 2011).  The ALJ provided good reasons for discounting the opinion and substantial evidence supports the ALJ's assignment of "little weight" to Dr. Spare's March 2015 opinion.

The ALJ also assigned "little weight" to Dr. Spare's May 2015 opinion regarding Plaintiff's depression and anxiety.  (R. at 28, 415–22.)  In contrast to this opinion, Dr. Spare's notes from an appointment in May 2015 indicate that Plaintiff was feeling better, tolerating medication without difficulty, and "seemed in much better spirits."  (R. at 415.)  Dr. Spare also noted that Plaintiff was spending time doing tasks around the house and activities with his children.  (*Id.*)  Dr. Spare's progress notes are, therefore, inconsistent with his opinion.  The ALJ properly discounted it for this reason.  *Hannah v. Comm'r of Soc. Sec.*, 2017 WL 4946578, at *4 ("[T]he ALJ concluded the limitations imposed by [Plaintiff's medical providers] were not supported by the providers' own treatment notes . . . .").  The ALJ, therefore, reasonably declined to give it controlling weight.  *Lucas v. Comm'r of Soc. Sec.*, No. 1:09-cv-920, 2010 WL 2992394, at * 6 (finding that an ALJ may properly discount a treating physician's opinion when it is not supported by the physician's own treatment notes).  Furthermore, subsequent psychiatric medical records also were inconsistent with Dr. Spare's opinion.  (R. at 448–51.); *Lucas*, 2010 WL 2992394 at *4 ("A treating physician's opinion is not entitled to controlling weight where it is . . . inconsistent with the other substantial evidence in [the] case record.").  Accordingly, substantial evidence supports the ALJ's assignment of "little weight" to Dr. Spare's May 2015 opinion and the ALJ provided good reasons for doing so.

The ALJ assigned "little weight" to Dr. Spare's June, July, and October 2015 opinions that Plaintiff was "unable to sustain any substantial gainful employment" or return to his previous work.  (R. at 424–38, 440–44, 446, 455–82, 487–88, 501–22.)  The ALJ correctly noted

20

that these opinions addressed issues that were reserved for the Commissioner.  SSR 96-5P, 1996

WL 374183, at *1 (1996) ("[T]reating source opinions on issues reserved to the Commissioner

are never entitled to controlling weight or special significance.")  If opinions on matters reserved

for the Commissioner were entitled to controlling weight, it would, "in effect, confer upon the

treating source the authority to make the determination or decision about whether an individual is

under a disability, and thus would be an abdication of the Commissioner's statutory

responsibility to determine whether an individual is disabled."  *Id.* at *2.  The Undersigned finds,

therefore, that the ALJ properly evaluated the opinions of Dr. Spare.

### B.  RFC Determination

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and

mental limitations resulting from her impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x

149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of

RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).

Nevertheless, substantial evidence must support the Commissioner's RFC finding.  *Berry v.

Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).  When

considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the

temptation to play doctor and make their own independent medical findings.'"  *Simpson v.

Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d

966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at

*10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in

functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he set forth

in the claimant's RFC:

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence. (ECF No. 7, at pg. 12.) The ALJ set out Plaintiff's RFC as follows:

[P]erform light work as defined in 20 CFR 404.1567(b) except the [Plaintiff] can frequently climb ramps and stairs, and occasionally stoop, crouch, and climb ladders, ropes, and scaffolds. The [Plaintiff] can perform goal-based production work that is not at a production rate pace. He would need an additional break during the workday and he would need a low stress job (which is defined in the [Plaintiff's] case as a job where there are no more than occasional changes).

(R. at 23.)

Specifically, Plaintiff asserts that because the ALJ determined Plaintiff had the severe impairments of degenerative disc disease and major depressive order, the RFC determination that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) was not supported by the evidence, nor does it account for Plaintiff's mental impairments. (ECF No. 7, at pg. 13.) Furthermore, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ "failed to give any medical source's opinion significant or great weight." (*Id.*) The ALJ indeed determined that Plaintiff had the severe impairments of a major depressive disorder and degenerative disc disease of the lumbar spine, which significantly limit the ability to perform basic work activities as required by SSRs 85-28 and 96-3p. (R. at 21.)

Even though the ALJ did not assign controlling weight to any medical source's opinion, substantial evidence supported the ALJ's RFC determination.  (*See* R. at 20–30.)  For example, substantial evidence supported the ALJ's conclusions that "[i]n activities of daily living, [plaintiff] has mild restriction" and "[i]n social functioning, [plaintiff] has mild difficulties."  (R. at 21–22.)  Regarding activities of daily living, the ALJ emphasized that Plaintiff self-reported activities including getting his kids to school, cooking meals, shooting, hanging around the barn, computer use, visiting with friends, and household chores.  (R. at 21, 365–71, 376–83.)  Plaintiff also self-reported other activities including driving his child to daycare every day, attending his child's baseball game once a week, playing video games with his children, and using Facebook.  (R. at 21, 63–65, 68.)  The ALJ properly considered Plaintiff's relatively mildly-restricted activities of daily living in making the RFC determination.  *Foster v. Brown*, 853 F.2d 483, 489–90 (6th Cir. 1988) ("The determination of Residual Functional Capacity involves consideration not only of history, findings, and observations from medical sources, but also of other relevant evidence, such as reports of the individual's activities of daily living[.]") (citation omitted).

Regarding social functioning, the ALJ noted that in a July 2014 psychological consultative examination, Dr. Ickes did not indicate that Plaintiff had a diagnosed mental impairment and noted no overt signs of anxiety.  (R. at 22, 338–42.)  Furthermore, the ALJ noted that in the same evaluation, Plaintiff denied experiencing "any significant symptoms of hyper-arousal, agitation, panic, intrusive thoughts, obsessions or compulsions, or any other clinical symptoms of an anxiety disorder."  (R. at 22, 341.)  Additionally, the ALJ pointed out that Plaintiff also reported that he took his medications, attempted tasks around the house, watched television, and drove a tractor.  (R. at 22, 338–42.)  The ALJ also explained that Dr. Ickes concluded that "exposure to work stress may create some distress, but [Plaintiff] would be

capable of coping with such." (R. at 22, 342.) The ALJ properly considered the observations from Dr. Ickes evaluation in making the RFC determination. *Foster*, 853 F.2d at 489–90.

Plaintiff asserts that because the ALJ "failed to give any medical source's opinion significant or great weight," it demonstrates that the ALJ's RFC determination is not supported by substantial evidence. (ECF No. 7, at pg. 13.) However, as previously noted, "[w]here the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion." *Price*, 342 F. App'x at 175–76 (citations omitted). While it is the ALJ's responsibility to assess a plaintiff's RFC, this assessment does not fall solely on the opinions of medical sources. 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . . the administrative judge . . . is responsible for assessing your residual functional capacity.")

Medical sources need only be considered in the ALJ's determination, not given a specific level of weight. *See* 20 C.F.R. § 404.1545(3) ("We will *consider* any statements about what you can still do that have been provided by medical sources . . . .") (emphasis added). Moreover, this Court has specifically rejected the argument that an ALJ improperly determined a plaintiff's RFC when the ALJ "did not directly adopt any specific medical opinion as to Plaintiff's mental capacity" and made what the plaintiff described as a "lay opinion." *Conkle v. Comm'r of Soc. Sec.*, No. 2:14-cv-0180, 2015 WL 1046197, at *4 (S.D. Ohio March 10, 2015). The Court found that "an ALJ does not need to adopt the precise restrictions contained in any particular medical opinion when formulating a residual functional capacity finding." *Id.* at *6 ("Where there is enough evidence in the record to support the ALJ's conclusions as to various aspects of the

residual functional capacity finding, those conclusions are not reversible simply because they are not drawn word for word from specific medical opinions in the record.").

In fact, the ALJ, in some instances, found the Plaintiff to have greater limitations than those assessed in some opinions. For example, the ALJ diverged from Dr. Ickes' assessment that Plaintiff did not have any limitations in his ability to maintain concentration, persistence, or pace. (R. at 28, 342.) The ALJ explained that because Plaintiff suffers from a major depressive disorder and pain from degenerative disc disease, it is reasonable to find that he would have some limitations in these areas. (R. at 28.) Additionally, the ALJ assigned an RFC determination that was more restrictive than the opinions of the state agency medical consultants. The state agency medical consultants did not opine that Plaintiff had a severe mental impairment. (R. at 27, 93–102, 104–15.) The ALJ pointed out, though, that Plaintiff received psychiatric treatment and was on psychotropic medications. (R. at 21, 23.) Accordingly, it was proper for the ALJ to conclude that Plaintiff's major depressive disorder was severe. (*Id.*) The ALJ, therefore, found some work-related limitations to be appropriate. (*Id.*)

Plaintiff also argues that the hypothetical question posed to the VE on the issue of moderate limitations of concentration, persistence, and pace was not adequate. (ECF No. 7, at pg. 15.) However, the ALJ is not required to include in a hypothetical question limitations that are not supported by the record. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.") (citation omitted); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[For] the role of a vocational expert under the social security regulations, we do not

read [prior case law in this circuit] to hold that hypothetical questions to vocational experts are required to include lists of [plaintiffs'] medical conditions.").

Here, the ALJ properly evaluated the record and provided sufficient explanation based on substantial evidence. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."). The ALJ detailed Plaintiff's activities of daily living, social functioning, concentration, persistence, and pace, as well as Plaintiff's episodes of decompensation of which he has experienced none. (R. at 21–22.) The ALJ further explained that the medical opinions to which she gave "little weight" were not supported by medical progress notes and Plaintiff's self-reported activities. (R. at 21, 28, 29, 63, 69, 341–68, 340, 387–88, 480.) The Undersigned finds, therefore, that the ALJ's determination of Plaintiff's RFC was supported by substantial evidence.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## <u>PROCEDURE ON OBJECTIONS</u>

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: April 18, 2019                    /s/ *Elizabeth A. Preston Deavers*
                                        **ELIZABETH A. PRESTON DEAVERS**
                                        **CHIEF UNITED STATES MAGISTRATE JUDGE**